UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

NBTC Limited,

                Plaintiff,           Case No. _____

   v.

Compute North, LLC,                 **COMPLAINT**

                                                           **Jury Trial Demanded**

               Defendant.

---

Plaintiff NBTC Limited ("Plaintiff" or "NBTC"), by and through its attorneys, submits this Complaint against Defendant Compute North, LLC ("Defendant" or "Compute North"), for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, and civil theft.

**NATURE OF THE ACTION**

1.     NBTC brings this breach-of-contract action to recover $1,383,024.00 of fees and deposits that Compute North has a contractual obligation to refund, as well as exemplary damages.

2.     Compute North repeatedly refused to honor its contract with NBTC. The parties entered an agreement in November 2021 ("the Agreement), under which Compute North promised to provide a facility to house NBTC's cryptocurrency machines. The Agreement required NBTC to pay initial fees and a substantial deposit, which were refundable if Compute North did not perform its obligations by June 30, 2022.

3.     NBTC paid the first installment of the deposit, met all its obligations under the agreement, and performed in good faith. It repeatedly made itself available to Compute North and

116355471.1 0099999-00006

even tried to negotiate alternative deployments when Compute North suggested that it might not meet its obligations.

4. By contrast, Compute North repeatedly dishonored its obligations under the Agreement and provided shifting explanations for these failures. It failed to meet the deadline of June 30, 2022. When it became increasingly likely that a deployment would not occur on time, Compute North threatened to breach unless NBTC signed a new agreement with extremely unfavorable terms. When NBTC declined to sign that agreement, Compute North announced it did not intend to perform and promised to return the deposit and initial fees the week of July 4, 2022.

5. Compute North breached that promise as well, and never refunded the money.

## THE PARTIES

6. NBTC is a Hong Kong registered limited company with business operations conducted in the United States, among other countries. NBTC owns cryptocurrency mining machines and deploys them to facilities around the world that provide hosting solutions and offer power sources.

7. NBTC is an indirect wholly-owned subsidiary of The9 Limited, an entity registered in the Cayman Islands, with its principal place of business in Shanghai, China ("The9"). The9 is an Internet company that has been listed on Nasdaq since 2004. The9 aims to become a global diversified high-tech Internet company and is engaged in several ventures including the NFT platform development business and the operation of cryptocurrency mining.

8. Compute North is a Delaware limited liability company with its principal place of business in Eden Prairie, Minnesota. Compute North provides digital infrastructure solutions for highly specialized computing needs, including blockchain, cryptocurrency, and other distributed computing applications.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because this action is between entities formed and with their principal places of business in different countries, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Compute North because it maintains its principal place of business in this district.

11. Venue is proper in this District under 28 U.S.C. § 1391(b), in that Compute North resides in the District of Minnesota, which is also where a substantial part of the events giving rise to the claims occurred. Additionally, under Section 16.6 of the Agreement, the parties agreed that "[a]ny action arising out of or relating to this Agreement shall be brought only in the state or federal courts located in the State of Minnesota[.]"

## FACTUAL BACKGROUND

**A. The technology of cryptocurrency mining.**

12. NBTC is in the business of mining cryptocurrency, a digital or virtual currency that is secured by cryptography, which makes it nearly impossible to counterfeit.

13. Many cryptocurrencies are based on blockchain technology, a decentralized network of computers used to record a series of transactions. Put simply, the process of generating cryptocurrency, referred to in the industry as "mining", consists of computers (referred to as "miners"), typically working together, processing large amounts of data to solve complex mathematical operations to validate cryptocurrency transactions and record them on a blockchain.

3

The first computer (i.e., miner) to solve the problem presented by the blockchain receives the next block of cryptocurrency and the process begins again.

14. The miners require sophisticated hardware to process and complete mathematical operations. Miners are expensive, and hundreds of miners typically are used to run an efficient cryptocurrency mine.

15. Mining cryptocurrency also requires a large amount of electricity to power the miners on a continuous basis. When running, miners generate significant amounts of heat and special attention must be given to ensure that the miners do not overheat.

16. Compute North manufacturers, sells, and operates mobile data centers which are used to house and run the miners so that they can mine cryptocurrency. It also rents rack space within its mobile data centers to its customers and contracts with them to provide power and internet service, which allows customers to deploy their miners to mine cryptocurrency.

**B. NBTC contracts with Compute North**

17. On November 10, 2021, Compute North and NBTC entered into the Agreement under which Compute North would provide certain colocation and management services ("Services") for NBTC's cryptocurrency mining equipment, including Bitmain S19j miners ("Equipment").

18. Under the Agreement, Compute North was to provide more than 32MW of capacity for 10,000 Bitmain S19j miners that NBTC would deploy in the United States, beginning in the second quarter of 2022.

19. Under Section 2.1 of the Agreement, Compute North agreed to provide NBTC a cryptocurrency mining facility, including rack space, electrical power, ambient air cooling, internet connectivity and physical security for NBTC's Equipment at a Compute North facility ("Facility").

20. Under Section 3.1, Compute North agreed to provide certain managed services as elected by NBTC on an order form, which was Exhibit A to the Agreement ("Order Form").

21. Under Section 6.1, and in exchange for the Services, NBTC agreed to pay Compute North, in addition to certain monthly fees and taxes, an initial deposit in accordance with the schedule set forth in the Order Form ("Initial Deposit").

22. Under Section 5.3 of the Agreement, if Compute North could not deploy any Equipment by June 30th, 2022, Compute North had to return the Initial Deposit in full back to NBTC.

23. On November 17, 2021, NBTC paid Compute North the first installment of the Initial Deposit in the amount of $1,383,024 pursuant to the schedule set forth in the Order Form (the "First Installment").

24. Compute North indicated by email dated January 20, 2022, that it would deploy NBTC's Equipment to its Wolf Hollow facility in Texas ("Wolf Hollow Facility"), or a different facility depending on which site(s) became available first in order to meet the requirements of the Agreement.

25. In April 2022, NBTC learned that Compute North was seeking to rescind the Agreement and negotiate a new agreement with materially altered terms.

26. Upon information and belief, Compute North obtained a new financing partner, DBA Constellation Energy, that was pressuring Compute North to seek revised terms from counterparties.

27. Compute North threatened to exclude NBTC from the Wolf Hollow Facility unless NBTC agreed to rescind the Agreement and enter into the new agreement.

28.     The new terms Compute North proposed were unfair and unworkable to NBTC, and directly conflicted with or neglected the crucial commercial terms the parties negotiated and memorialized in the Agreement.

29.     By letter dated April 29, 2022, NBTC rejected Compute North's invitation to rescind the Agreement. NBTC urged Compute North to abide by the Agreement as executed.

30.     On June 9, 2022, Compute North informed NBTC that it would not provide space for NBTC's Equipment at the Wolf Hollow Facility.

31.     As a result, on June 13, 2022, NBTC demanded that Compute North refund all fees and payments it paid under the Agreement because Compute North confirmed in writing it would not deploy the Equipment by June 30, 2022.

32.     Having not received a response, on June 20, 2022, NBTC again demanded that Compute North refund all fees and payments it paid to Compute North under the Agreement.

33.     On June 22, 2022, Compute North said that it would begin the return of the First Installment "promptly" after the June 30, 2022 deadline under Section 5.3 of the Agreement.

34.     Compute North did not return the First Installment as it assured NBTC it would.

35.     As a result, by letter dated July 15, 2022, NBTC sent a final notice to Compute North demanding a full refund of the First Installment by July 22, 2022.

36.     To date, despite NBTC's repeated demands for Compute North to refund the First Installment, Compute North has refused to do so.

## COUNT I

## BREACH OF CONTRACT

37.     NBTC realleges all allegations set forth above in paragraphs 1 through 36.

38.     The Agreement constitutes a valid and enforceable contract.

39.     NBTC fully performed and complied with all the terms of the Agreement.

40. Compute North materially breached and repudiated the Agreement by, *among other things*, failing to deploy the Equipment by June 30, 2022, and then refusing to return the First Installment.

41. As a direct and proximate result of Compute North's breach of the Agreement, NBTC has suffered damages, including the loss of the First Installment.

## COUNT II

## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

42. NBTC realleges all allegations set forth above in paragraphs 1 through 36.

43. The Agreement constitutes a valid and enforceable contract.

44. NBTC fully performed and complied with all the terms of the Agreement.

45. Compute North unfairly prevented NBTC from receiving the benefits it was entitled to under the contract by, among other things, failing to use its best efforts to make the Wolf Hollow Facility, or another facility, available to NBTC pursuant to the terms of the Agreement.

46. Upon information and belief, Compute North offered to deploy miners for other companies only if they signed a new agreement that included less favorable terms including enhanced security interests in the miners, further limitations of liability, and other contractual provisions that were less favorable than the Agreement.

47. As a direct and proximate result of Compute North's breach of the Agreement, NBTC has suffered damages, including the loss of the First Installment.

## COUNT III– UNJUST ENRICHMENT

48. NBTC realleges all allegations set forth above in paragraphs 1 through 36.

49. NBTC paid Compute North for its services under the Agreement.

50. As set forth above, Compute North breached the Agreement to NBTC's detriment and damage.

116355471.1 0099999-00006

51. Despite its breach of the Agreement, Compute North has retained the benefit of the Agreement and the amounts paid by NBTC, which is to the further detriment and damage of Plaintiff.

52. It is inequitable to allow Compute North to retain the benefit of the Agreement and the amounts paid by NBTC given Compute North's breaches of the contract and the substantial damages that Plaintiff has incurred as a result thereof.

53. NBTC is entitled to recover all amounts paid to Compute North in connection with the Agreement together with any other amounts proven at trial.

## COUNT IV– CONVERSION

54. NBTC realleges all allegations set forth above in paragraphs 1 through 36.

55. As set forth above, Compute North owes NBTC reimbursement of the fees and deposits made under the Agreement.

56. Plaintiff has repeatedly requested payment of this amount from Compute North.

57. Despite the repeated demands for payment, Compute North has deliberately and intentionally refused to reimburse NBTC.

58. As a direct and proximate result of Compute North's wrongful conduct and refusal to pay the amount due and owing, Plaintiff has been damaged in an amount to be proven at trial, together with interest and punitive damages.

## COUNT V– CIVIL THEFT

59. NBTC realleges all allegations set forth above in paragraphs 1 through 36.

60. Defendant took Plaintiff's property when it failed to return the deposits and fees as required under the Agreement.

61. Defendant's conduct is in violation of Minn. Stat. § 604.14, subd. 1.

116355471.1 0099999-00006

62. Defendant is liable to Plaintiff for the funds plus 100 percent of the value of the stolen property as punitive damages.

63. As a direct and proximate result of this civil theft, Plaintiff has been damaged in an amount in excess of $75,000.

64. As a direct and proximate result of Compute North's wrongful conduct and refusal to pay the amount due and owing, Plaintiff has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, NBTC prays for judgment as follows:

1. For an award of NBTC's damages in an amount in excess of $75,000, equal to the damages suffered as a result of the unlawful conduct, practices, and activities engaged in by Defendant, plus any and all penalties and/or exemplary damages permitted by law;

2. Awarding Plaintiff interest, costs, and disbursements; and

3. Granting such other, further, or different relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 5, 2022.                     **STOEL RIVES LLP**

By: *s/ Andrew J. Pieper*
Andrew J. Pieper (#0389262)
John T. Katuska (#0401273)
33 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 373-8800
andrew.pieper@stoel.com
john.katuska@stoel.com

**ATTORNEYS FOR PLAINTIFF
NBTC LIMITED**

116355471.1 0099999-00006